UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAVID SCOTT,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )    No. 1:17-cv-03885-SEB-DLP
                                      )
JERRY BUMPUS, et al.                  )
                                      )
            Defendants.               )

**Order Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff David Scott, an inmate at the Wabash Valley Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 alleging that he received inadequate medical care for a broken jaw while he was confined at the Marion County Jail. The defendants, who are all Sheriff Deputies at the Jail, move for summary judgment on Mr. Scott's claims. Mr. Scott has responded, and the defendants have replied. For the following reasons, the motion for summary judgment is **granted**.

### I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

Mr. Scott has responded to the motion for summary judgment. But he did not submit evidence or identify parts of the record to support his claims. Accordingly, the facts alleged in the defendants' motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "[r]educ[e] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Facts

When the events giving rise to his claim took place, Mr. Scott was a pre-trial detainee housed at the Jail pending criminal charges. Dkt. 70-2. Mr. Scott claims that he "was assaulted by another inmate at the facility" on February 2, 2016. Dkt. 70-1, p. 8. None of the defendants in this case witnessed the assault and Mr. Scott did not report the assault to any of them. *Id.*, p. 10.

Following this assault, Mr. Scott had "throbbing pain in [the] left mandible, a headache, and the inside of [his] mouth was … getting dry, like the mucous membrane had been damaged." *Id.*, p. 12. He could not open or close his mouth without pain. *Id.* But he did not have any bleeding or lacerations that were visible on the outside of his face. *Id.*, p. 19.

Within a few hours of the assault, Mr. Scott submitted a written request for medical care directly to one of the nursing staff. *Id.*, p. 18. Mr. Scott's request was classified as a "sick call" request by nursing staff. *Id.*, p. 22. He was seen by Dr. Hill on February 5, 2016. *Id.* That same day, he was sent to Eskenazi Hospital where he received a CT scan and was diagnosed with a fracture of the left mandibular bone and an abscess. *Id.*, p. 24-25; dkt. 70-5, p. 2. He returned to the Jail later that afternoon and was placed in the infirmary. Dkt. 70-1, p. 26. He was returned to his cell later that night. *Id.* at 27.

On February 6, 2016, Mr. Scott presented another written health request. *Id.*, p. 28; dkt. 70-5, p.28. This request states, "The Ibuprofen isn't working. Could I please get something else?" Dkt. 70-5, p. 28. This request was tendered directly to the nurse—not any of the Sheriff Deputies—when the nurse made her regularly scheduled rounds that morning. Dkt. 70-1, p. 28. Medical staff saw Mr. Scott on February 8, 2016. *Id.*, p. 31.

Mr. Scott submitted a third request for medical care on February 13, 2016. *Id.* He submitted this handwritten request to a nurse. *Id.*, p. 32. Mr. Scott was seen by Dr. Hill on February 16, 2016.

*Id.*, p. 32. Dr. Hill noted, "called HSA office and they are now aware of the fact that the patient needs to get a follow-up appointment with plastic department at Eskenazi." *Id.*, at 33; dkt. 70-5, p. 32-33.

After the February 13, 2016 request, Mr. Scott is not "sure of any specific dates" when he requested any additional medical assistance. Dkt. 70-1, p. 35. Mr. Scott was seen daily by nursing staff between February 17, 2016 and February 24, 2016, to receive his medications. *Id.*, p. 35-36. Mr. Scott was then sent to the special care unit. *Id.*, p. 36. He was then transferred to Eskenazi Hospital where he had surgery performed on his jaw on February 25, 2016. *Id.*

During this time, Mr. Scott made requests to the defendant Sheriff Deputies for medical assistance. *Id.*, p. 45. However, he does not recall any specific dates or times at which these requests were made. *Id.* All of these requests were verbal, *id.*, and some occurred in passing. *Id.*, p. 54. Other than a general range of February 2, 2016 to February 25, 2016, he does not recall when these requests were made and to whom. *Id.*, p. 45.

According to Jail policy, an inmate needing medical care "must fill out a health care request form. The inmate must return the form to one of the nurses during the medication rounds." Dkt. 70-15, ¶ 5; *see also* dkt. 70-7, p. 4. Jail policy prohibits Deputies from accepting written medical requests from inmates. Dkt. 70-11, ¶ 6; dkt. 70-7, p. 4. "If a deputy receives a verbal request for medical assistance, it is standard policy for deputies to tell detainees that requests for medical care need to be made directly to one of the nurses." Dkt. 70-13, ¶ 5. However, if an inmate has a serious medical condition requiring immediate attention, such as trouble breathing or chest pains, the Deputies alert the medical staff of the immediate need. Dkt. 70-9, ¶ 6; dkt. 70-12, ¶ 4. Once the medical staff is notified of the request, either through the health care request form or directly from a Jail staff member, the Deputies have no control over when the inmate is seen by the medical

provider. Dkt. 70-13, ¶ 6. Deputies have no authority over the medical treatment that an inmate receives from medical staff. Dkt. 70-12, ¶ 5; dkt. 70-15 at ¶ 6; dkt. 70-9, ¶ 7.

### III. Discussion

The defendants move for summary judgment on Mr. Scott's claims arguing that they were not deliberately indifferent to his medical needs. Because Mr. Scott was a pre-trial detainee at the time of the medical care alleged in his complaint, his claims are properly analyzed under the objective unreasonableness standard of the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "[T]he controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). The first step "'asks whether the [] defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *Id.* (quoting *Miranda*, 900 F.3d at 353). Negligence or even gross negligence is not enough. *Id.* In the second step, the Court focuses "on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively – without regard to any subjective belief by the individual – whether the response was reasonable." *Id.* Further, non-medical defendants, such as the Sheriff Deputies, "will generally be justified in believing that the prisoner is in capable hands" if he is under the care of medical personnel. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.32d 645, 656) (7th Cir. 2005)).

Here, while Mr. Scott testified at his deposition that he complained to various Deputies regarding his jaw, he does not state when he made those complaints or describe them in any detail. Meanwhile, it is undisputed that Mr. Scott submitted several requests to medical staff for care after the injury to his jaw. His first request was shortly after the assault and medical staff treated it as a

sick call request and not an urgent need. Dkt. 70-1, p. 12. Once he saw the dentist, he was sent to the hospital, treated, and returned to the Jail. *Id.* p. 27-28. The next day, he tendered another written health request to medical staff. *Id.*, p. 28; dkt. 70-5 at 28. Medical staff saw Mr. Scott on February 8, 2016. Dkt. 70-1, p. 31. He submitted a third request for medical care to a nurse on February 13, 2016. *Id.* Mr. Scott was seen by Dr. Hill on February 16, 2016, who noted that Mr. Scott needed to follow-up at the hospital. *Id.*, p. 33; dkt. 70-5, p. 32-33. Mr. Scott was seen daily by nursing staff between February 17 and 24, 2016 to receive his medications. *Id.*, p. 35-36. Thereafter, Mr. Scott was sent to the special care unit. *Id.*, p. 36. He was then transferred to Eskenazi Hospital where he had surgery performed on his jaw on February 25, 2016. *Id.*

In short, during the time of the incidents in his complaint, Mr. Scott was requesting assistance from medical staff, who were providing him with treatment. The defendants – all non-medical Jail officers – were entitled to rely on the decisions that medical personnel made regarding Mr. Scott's treatment. *See Arnett*, 658 F.3d at 755. While there is no evidence that the Deputies acted on any request by Mr. Scott for care, Mr. Scott has pointed to no evidence to support a conclusion that a reasonable officer in the position of the defendants would have acted differently. *See Miranda*, 900 F.3d at 343 ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention."); *cf. Giles v. Godinez*, 914 F.3d 1040, 1049-50 (7th Cir. 2019) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Because any lack of intervention on the part of the defendants was justified since Mr. Scott was receiving evaluation and treatment by medical staff, they are entitled to summary judgment on his claims.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [69], is **granted**. Judgment dismissing Mr. Scott's claims with prejudice shall now issue.

**IT IS SO ORDERED.**

Date: 12/23/2019

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DAVID SCOTT
264113
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel